Malchijah Jake MOSES *v.* STATE of Arkansas

CA CR 00-119                                    39 S.W.3d 459

Court of Appeals of Arkansas
Division IV
Opinion delivered February 7, 2001

*Alvin Schay*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

JOHN F. STROUD, JR., Chief Judge. Appellant, Malchijah "Jake" Moses, was convicted of stalking in the first degree and sentenced to serve a period of eleven years in the Arkansas Department of Correction. He contends that the trial court erred in denying his motions: (1) for directed verdict, and (2) to dismiss the stalking charge based on double jeopardy. We affirm.

Appellant and his wife, Cheryl Moses, separated in August 1998. After the separation, appellant began making numerous telephone calls to Ms. Moses at all hours of the day and night. The calls grew so frequent that Ms. Moses purchased caller identification and would not answer the telephone when she knew it was him.

On the morning of December 15, 1998, appellant telephoned Ms. Moses at 2:30 a.m. Although she told him that she would not talk to him at that time of the morning, he called again at 3:30 a.m. and 6:15 a.m. Appellant called Ms. Moses's mother, Karen Rutledge, at 8:15 a.m., making accusations such as she was keeping Ms. Moses from talking to him. At approximately 8:25 that morning, appellant called Ms. Moses at work and told her that her son Jonathan would die. Based upon this occurrence, a municipal judge issued a no-contact order in favor of Ms. Moses against appellant on that same date; however, the order was not served on appellant until two days later. Appellant was ultimately convicted of terroristic threatening in municipal court based upon this December 15, 1998, conversation with Ms. Moses wherein he said Jonathan would die.

On December 22, 1998, appellant called Ms. Moses and Ms. Rutledge and told them that he had reported Ms. Moses to the Department of Human Services for abusing their daughter, Tara. He also left numerous messages on Ms. Moses's answering machine over the course of that day. In those messages, appellant told Ms. Moses to either talk to him or "that's it"; he told her "don't ever be a mother to my children"; and that he loved his children, he would do anything to protect them, and that she would not stand between him and his children. In his message at 11:06 p.m., appellant told Ms. Moses to call him before it was "too late."

Appellant was to have visitation with his three-year-old twins on the morning of December 23, but he called Ms. Moses at 7:30 that morning and told her he did not feel well. Actually, appellant drove to Hot Springs to purchase a gun and ammunition. The clerk who sold the gun to him was so concerned by his demeanor that he contacted the sheriffs' offices in Garland County and Clark County. Shortly thereafter, Ms. Moses was informed by the acting chief of police of Arkadelphia that he had information that appellant had purchased a gun and ammunition that day in Hot Springs in contravention of the no-contact order. The police set up a watch, and appellant was stopped upon returning to Arkadelphia.

A .22 caliber pistol and a box of ammunition was found in his vehicle, at which time he was arrested.

■ ■ For his first point, appellant argues that the trial court erred in denying his motion for directed verdict on the charge of stalking in the first degree. A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Dodson v. State*, 341 Ark. 41, 14 S.W.3d 489 (2000). In reviewing a motion for directed verdict, the evidence is viewed in the light most favorable to the State, and a conviction will be affirmed if there is substantial evidence to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resort to speculation and conjecture. *Id.*

Arkansas Code Annotated section 5-71-229(a)(1)(A) (Repl. 1997) provides:

> (a)(1) A person commits stalking in the first degree if he purposely engages in a course of conduct that harasses another person and makes a terroristic threat with the intent of placing that person in imminent fear for the death or serious bodily injury of his or her immediate family and he:
>
>> (A) Does so in contravention of an order of protection consistent with the Domestic Abuse Act of 1991, § 9-15-101 *et seq.*, or a no contact order as set out in subdivision (a)(2)(A) of this section, protecting the same victim or victims, or any other order issued by any court protecting the same victim or victims;

"Course of conduct" is defined as "a pattern of conduct composed of two (2) or more acts separated by at least thirty-six (36) hours, but occurring within one year." Ark. Code Ann. § 5-71-229(d)(1)(A).

Appellant specifically argues that the State failed to show that there was a thirty-six hour period between his acts of harassment toward Ms. Moses after the no-contact order was issued, and that there was no evidence of a terroristic threat. Appellant reads the statute as requiring that the acts constituting the course of conduct all occur after the order of protection or no-contact order has been issued. Therefore, he contends that the only conduct that can be considered are those acts that occurred after he received the no-contact order on December 17; that the only harassing conduct

after that time was on December 22 and 23; and that the conduct on those days was not separated by at least thirty-six hours. We disagree.

There have been no cases decided by this court or our supreme court interpreting the statute for stalking in the first degree. However, appellant's argument would require that a person first be subjected to conduct warranting an order of protection or an order of no contact and then endure at least two more acts separated by at least thirty-six hours before charges of stalking in the first degree could be filed. This court will not interpret a statute, even a criminal one, so strictly as to reach an absurd conclusion that is contrary to legislative intent. *Jackson v. State*, 336 Ark. 530, 986 S.W.2d 405 (1999).

Clearly, appellant's course of harassing conduct toward Ms. Moses began after they separated in August. Ms. Moses testified that appellant called her so many times that she would no longer answer the telephone if she knew it was him calling. This conduct, coupled with appellant's actions on December 22 and 23, clearly constitutes a harassing course of conduct as contemplated by the statute.

Appellant also argues that other than his threat against Ms. Moses's son Jonathan on December 15, he made no terroristic threat. However, Ms. Moses testified that in one of his messages from December 22 on her answering machine, appellant told her to call him before it was "too late." Although she said that she initially interpreted this comment to mean that he intended to kill himself, after she thought about the statement and the other messages he had left for her, she believed he was threatening to do something to her if she did not call him, and she was afraid for her life and the lives of her children and mother. There is sufficient evidence of a terroristic threat to sustain appellant's conviction for stalking in the first degree.

Appellant lastly argues that the trial court erred in denying his motion to dismiss the stalking charges based upon the contention that it constituted double jeopardy. He maintains that his conviction in municipal court of terroristic threatening prevented it from being used a second time to convict him of stalking in the first degree. He also argues that stalking in the first degree is defined as a continuing course of conduct under Ark. Code Ann. § 5-1-

110(a)(5) (Repl. 1997), and because the terroristic threat for which he had already had been convicted arose from the same impulse that caused him to make threats against Ms. Moses, he cannot now be prosecuted for stalking in the first degree as well. Appellant's arguments are misplaced.

■ In *Muhammad v. State*, 67 Ark. App. 262, 998 S.W.2d 763 (1999), this court determined the following standard of review to be applied on appeal of a double jeopardy issue:

> [W]e hold that on review of a double jeopardy issue, where the issue is a question of law, we review the question *de novo*, as we do on review of any question of law, and simply apply the applicable law. If the double jeopardy issue involves a question of fact or a mixed question of law and fact, then we conduct a *de novo* review but give deference to the trial court's credibility determination of the evidence and do not reverse factual findings unless they are clearly erroneous.

67 Ark. App. at 265, 998 S.W.2d at 764 (citations omitted).

■ Appellant's conviction for stalking in the first degree did not place him in double jeopardy based upon his previous conviction for terroristic threatening. The record of this case does not establish that the conduct for which appellant was convicted of terroristic threatening, the December 15 threat that Jonathan would die, was the terroristic threat used to convict him of stalking in the first degree. Appellant's December 22 message for Ms. Moses stating that she had better call him before it was "too late," which she understood to be a threat toward her, was a sufficient basis for the terroristic threat required by the stalking in the first degree statute.

Appellant also argues that stalking in the first degree is defined as a continuing course of conduct under Ark. Code Ann. § 5-1-110 (a)(5), and that the municipal court conviction for terroristic threatening was embodied in the continuing course of conduct required to convict him for stalking in the first degree. The statute provides:

> (a) When the same conduct of a defendant may establish the commission of more than one (1) offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense if:

. . .

(5) The conduct constitutes an offense defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

 Although stalking in the first degree does require repetitive acts, appellant's argument in this case is not persuasive. As previously explained, the elements of the crime of stalking in the first degree were sufficiently established and proved in this case without resort to the threat that resulted in the municipal court conviction for terroristic threatening, and thus the basis for the conviction of stalking in the first degree resulted in only one conviction.

Affirmed.

BIRD and VAUGHT, JJ., agree.